**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UZMA SHAHID BUTT,

        Plaintiff-Appellant,

  v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant-Appellee.

No.   16-55695

D.C. No. 2:15-cv-05690-JCG

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Jay Gandhi, Magistrate Judge, Presiding

Argued and Submitted February 5, 2018
Pasadena, California

Before: W. FLETCHER, BERZON, and OWENS, Circuit Judges.

Uzma Butt appeals the judgment of the district court affirming the Social

Security Commissioner's denial of Butt's application for disability benefits.

Reviewing the Commissioner's denial of benefits de novo, *see Carillo-Yeras v.*

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*Astrue*, 671 F.3d 731, 734 (9th Cir. 2011), we reverse and remand to the district court with instructions to remand to the Administrative Law Judge ("ALJ").

**1.** The testimony of vocational expert Aida Worthington did not conflict with the Dictionary of Occupational Titles ("DOT"). The DOT classifies the job of preschool teacher as requiring frequent reaching, DOT 092.227-018, but does not specify the frequency of over-the-shoulder reaching. Worthington explained that, while reaching generally is "classified as frequent," over-the-shoulder reaching specifically is "very rare" and could "be performed with either upper extremity." *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) ("[N]ot every job that involves reaching requires the ability to reach overhead."). Even if Butt was unable to perform any reaching with her right arm, there is no evidence that her left arm has any limitations with above-shoulder reaching. The vocational expert's testimony regarding Butt's ability to perform her past work as a preschool teacher is thus consistent with the DOT. The ALJ therefore had no conflict to resolve, *see* SSR 00-4p, and properly relied on Worthington's testimony.

**2.** The ALJ erred, however, in disregarding the medical opinion of examining physician Dr. Vagharshak Pilossyan. Dr. Pilossyan conducted a complete physical examination of Butt and made independent clinical findings. "[W]hen an examining physician provides 'independent clinical findings . . .,' such

findings are 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citations omitted).

Dr. Pilossyan's July 2013 physical assessment was also broadly consistent with Dr. Ali Dini's December 2013 physical assessment, which the ALJ rejected as not credible on the basis that it was inconsistent with Dr. Dini's earlier November 2012 assessment. But differences between Dr. Dini's November 2012 and December 2013 assessments do not render the two assessments inconsistent: Butt's physical condition could have deteriorated over the course of more than a year.[1] The ALJ erred in rejecting Dr. Dini's 2013 assessment, which in turn provides support for Dr. Pilossyan's assessment.

Finally, Dr. Pilossyan's testimony does not conflict with the assessments of Dr. Seung Ha Lim or Dr. Friedman. As to Dr. Lim, Dr. Lim examined Butt in November 2012; again, Butt's condition could have worsened between November 2012 and late July 2013, when Dr. Pilossyan examined her. Further, the ALJ did not provide any "specific and legitimate reasons . . . supported by substantial evidence," as she was required to do, for crediting Dr. Lim's opinion over that of treating physician Dr. Dini. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

---

[1]The ALJ also asserted that "there is no evidence the claimant has been treated or evaluated by Dr. Dini since November 2012." In fact, Dr. Dini's December 2013 assessment indicated that he saw Butt "every 2-3 month[s]."

2014) (internal quotation marks omitted). As to the State Agency medical consultant, Dr. Friedman, he did not examine Butt. The opinions of examining physicians like Dr. Pilossyan are generally given greater weight than those of reviewing physicians like Dr. Friedman. 20 C.F.R. § 404.1527(c)(1); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Because the ALJ did not provide legitimate reasons for rejecting Dr. Pilossyan's medical assessment, we credit that opinion as a matter of law, *Lester*, 81 F.3d at 834 (internal quotation marks omitted), and remand to allow the ALJ to properly weigh Dr. Pilossyan's opinion in its step four analysis. *See* 42 U.S.C. §§ 1381 *et seq.*

**3.** The ALJ also erred in finding Butt not credible as to her subjective pain testimony. The ALJ found that Butt's alleged physical limitations were inconsistent with the medical evidence. But the objective medical evidence *did* show a meniscus tear in the left knee, meniscal degeneration in the right knee, a large tear of the superior labrum in the right shoulder, and a mild disk protrusion in the lumbar spine.

Additionally, the ALJ pointed to supposed inconsistencies between Butt's statements and her daily activities. The ALJ noted that Butt and her son claimed that, "due to her physical impairments, she has significant difficulty performing

4

regular daily activities," yet, at the same time, Butt "admitted she is still able to engage in some simple meal preparation, light housework, and occasional shopping and social activities" and supposedly "inconsistently told Dr. Bagner she had no difficulty with personal self-care activities, was able to shop and cook, and was able to travel by car with someone else driving." These statements are not inconsistent. First, Butt's statements to Dr. Bagner were made in 2010, before the fall that she argues caused her left knee problems and before the ensuing knee surgery. Second, Butt's alleged difficulty performing regular activities is not inconsistent with her nonetheless occasionally performing those activities with difficulty. For example, Butt's statement that she is able to do very basic food preparation such as boiling an egg is entirely consistent with her assertion that she can "[f]eed self ok" but cannot "prepare meals everyday" as she used to.

Finally, the ALJ's determination, on the basis of two psychiatric evaluations, that Butt did not have any "severe mental impairment," does not support a conclusion that Butt is not credible. Neither Dr. Bagner's October 2010 evaluation, diagnosing Butt with depressive disorder, nor Dr. Simonian's November 2012 evaluation, noting that Butt performed poorly on formal memory testing and functioned at 61 out of 100 under the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) standard, is inconsistent with the statements made

5

by Butt and her son that she frequently feels tired, lacking in energy, "foggy," and "spaced out." Although Butt's psychiatric impairment may not be "severe" enough to qualify her as disabled on that basis — Butt maintains on appeal that this case turns on her physical limitations only — her subjective testimony is not inconsistent with the evidence in the record and so does not constitute a basis for an adverse credibility finding.

As the ALJ failed to identify any legitimate basis to find Dr. Pilossyan's assessment or Butt's subjective testimony not credible, we remand to the district court with instructions to remand to the ALJ to properly consider those elements and, if necessary, to proceed to step five of the sequential evaluation procedure.

**REVERSED and REMANDED.**